NOT FOR PUBLICATION                                                                         CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

ALTHRA SMALLS,

                Plaintiff,

v.                                                                          Civil Action No. 09-2048 (JLL)

COMISSIONER OF SOCIAL SECURITY                     **OPINION**

                Defendant.

_____

**LINARES**, District Judge.

      Presently before this Court is Plaintiff Althra Smalls's appeal seeking review of a formal determination by the Commissioner of Social Security ("Commissioner") denying his application for disability pursuant to § 223(f) of the Social Security Act. The issue before this Court is whether the Administrative Law Judge's ("ALJ") decision that Plaintiff was no longer disabled as of November 1, 2003, is supported by substantial evidence. Jurisdiction is proper under 42 U.S.C. 405(g) and 1383(c)(3). The Court has considered submissions made in opposition to and in support of the instant appeal. The matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court holds that the Commissioner's decision is supported by substantial evidence, and that the Commissioner carried her burden of proof at step eight of the analysis. The Commissioner's decision is hereby affirmed.

1

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff filed a Title II application for disability benefits, alleging disability as of October 17, 1991. Plaintiff was found disabled as of October 17, 1991 in a decision dated August 9, 1995. (R. 79-90.) Plaintiff received benefits due to his steroid-dependant asthma, which reduced him to a less than sedentary residual functioning capacity. (Id., at 89-90.) On November 17, 2003, he was found to be no longer disabled beginning November 1, 2003. (Id., at 98-99.) This determination was upheld following a disability hearing by a State Agency Disability Hearing Officer. (Id., at 115-19.) Subsequently, Plaintiff filed a written request for a hearing before an ALJ. (Id., at 120.)

The hearing was scheduled for March 1, 2006. At this time, Plaintiff requested an opportunity to obtain representation. (Id., at 73.) The request was granted, and the hearing adjourned. (Id., at 73-74.) The record was held open for thirty days so that Plaintiff could be afforded an opportunity to submit additional medical documentation. (Id., at 323.) The hearing was held on May 16, 2006. (Id., at 47.) Plaintiff appeared and testified. On July 27, 2006, a ten day letter was issued after no additional information was received. (Id., at 323.) On August 22, 2006 interrogatories were sent to Dr. Martin Fechner, who was serving as a medical expert. (Id., at 324.)

On October 3, 2006, another hearing was held. (Id., at 327.) Again, the record was held open for additional medical documentation. (Id., at 333.) No additional documentation was received, and a ten-day letter was issued on November 1, 2006. (Id.) On November 9, 2006, additional medical documentation was received, and Dr. Fechner was asked to give his medical

opinion on the interrogatories.  (Id., at 342-43)  His responses to the interrogatories were acquired in November of 2006 and offered to Plaintiff for review.  (See id., at 355-64.)

Following a request by Plaintiff's attorney, Plaintiff appeared and testified at a supplemental hearing on March 14, 2007.  (See id., at 25-44.)  Dr. Fechner also was present at this hearing.  (Id.)  On April 13, 2007, the record was closed after being held open pending receipt of additional medical documentation, which was not received.  (Id., at 370.)  ALJ Michal L. Lissek rendered her decision on May 22, 2007.  ALJ Lissek held that Plaintiff's disability ceased as of November 1, 2003.  (See id., at 12-24.)

On November 1, 2003, Plaintiff was 53 years of age.  The record shows that Plaintiff was employed as a cook and warehouse truck driver prior to his disability.  (Id., at 142-46.)  A review of the medical evidence indicates that on March 27, 2002, Plaintiff was hospitalized for chest and abdominal pain.  (Id., at 195.)  Upon examination, Plaintiff was found to have pericardial rub and abnormal blood sugar.  (Id.)  An EKG indicated sinus tachychardia at a rate of 120, and his urine showed some bile and blood.  (Id.)  Bilirubin levels were 2.3, while alkaline phosphatase levels were at 399.  (Id.)  The echocardiogram showed normal left ventricular function with an ejection fraction of fifty-five percent and a small pericardial effusion not hemodynamically significant.  (Id.)  Plaintiff responded to treatment and, contrary to medical advice, he refused to stay and signed out of the hospital on March 30, 2002.  (Id., at 196.)  The final diagnosis was acute pericarditis, probable gall bladder disease, diabetes mellitus, hypertension, and asthma.  (Id.)

In September of 2002, a state agency physician concluded that: (1) Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) he could stand

and/or walk about six hours and sit about six hours in an eight hour work day; (3) he could push and/or pull limited only by the aforementioned weights; (4) he could occasionally climb, balance, stoop, kneel, crouch, and crawl; and (5) he had environmental restrictions to pulmonary irritants.  (Id., at 227.)  In January of 2004, a state agency physician concluded that: (1) the claimant had asthma; (2) he could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (3) he could stand and/or walk about six hours and sit about six hours in an eight hour work day; (4) he could push and/or pull with the same restrictions as lifting/carrying; and (5) he had no postural or environmental limitations.  (Id., at 254-57.)

The medical record also reveals that in October 2006 both of Plaintiff's treating physicians–Dr. Garg and Dr. Surana–opined that Plaintiff's asthma was "not well controlled," that he could not stand and/or walk six to eight hours per day, that he suffered frequent exacerbations, that he experienced shortness of breath on exertion, and that he was afflicted with these complications since 2001.  (Id., at 334-35, 340-43.)  Dr. Garg has been treating Plaintiff for complications arising from asthma since June 2006.  (Id., at 334.)  Dr. Surana has been treating Plaintiff for his asthmatic condition since December 21, 2001.  (Id., at 340, 342.)  Dr. Surana prescribed the following medications to Plaintiff:  (1) Albuterol, one puff daily; (2) Advair, two puffs daily; (3) Proventil, two puffs daily; (4) Theophylline, two pills daily; (5) Aciphez, two pills daily; (6) Provachol, two pills daily; and (7) Avolomet, two pills daily.  (Id., at 296.)  Dr. Surana concluded that Plaintiff could not lift twenty pounds for two to three hours daily in an eight hour work day.  (Id., at 341.)

Dr. Martin Fechner, a Social Security Medical Expert, reviewed the record and opined that Plaintiff's asthma is well controlled, and that he could perform medium to light exertional

4

levels with asthma restrictions such as "no undo amount of dust" and "only minimal amounts of known chemical irritants." (Id., at 359-62.) He noted that Plaintiff had no emergency room visits or hospitalizations for asthma, and that he was not on steroids. (Id., at 355.)

## II.     LEGAL STANDARD

### A.  Disability defined

Pursuant to the Social Security Act, a claimant is required to show that he is disabled based on his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into consideration his age, education, and work experience, disability will be evaluated by the claimant's ability to engage in any form of substantial gainful activity existing in the national economy. Id. at § 423(d)(2)(A). If he can perform substantial gainful activity within the national economy, then he will not be considered disabled. Id. Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b).

### B.  Statutory Standard For A Continuing Disability

Under the Act, the Commissioner may determine that a recipient of disability benefits ceases to be entitled to those benefits upon "finding that the [original] physical or mental impairment . . . has ceased, does not exist, or is [no longer] disabling." 42 U.S.C. § 423(f). One situation where such a finding may be made is where substantial evidence indicates that there has been a medical improvement in the impairment(s) and that the claimant, at the time of the

5

decision, is able to engage in substantial gainful activity. Id., at § 423(f)(1). To determine if benefits should continue or if a change is warranted, the Social Security Administration has an eight-step process for evaluating the status of a claimant's disability. See 20 C.F.R. § 404.1594(f).

At step one, the Commissioner must determine if the claimant is engaging in substantial gainful activity. Id., at § 404.1594(f)(1). If he is engaged in substantial activity, then he will be considered no longer disabled. Id. If he is not engaged in any such activity, the analysis proceeds to step two. Id.

At step two, the Commissioner evaluates whether the claimant has "an impairment or a combination of impairments that either meets or equals the severity of an impairment listed in [20 C.F.R. Part 404, Subpart P, Appendix 1]." Id., at § 404.1594(f)(2). If the plaintiff meets or equals a listed impairment, then the disability continues. Id. If not, the analysis goes on to the third step. Id.

At step three, the Commissioner must determine whether there has been a medical improvement in the claimant's condition. Id., at § 404.1594(f)(3). The definition of medical improvement is "any decrease in the medical severity" of the relevant impairment that is established by improvements "in the symptoms, signs, and/or laboratory findings." Id., at § 404.1594(b)(1). In making this determination, the Commissioner compares the medical severity of the impairment(s) from the point of the most recent favorable determination with the current severity of the impairment(s). Id., at § 404.1594(b)(7). If a medical improvement has occurred, then the analysis proceeds to step four. Id., at § 404.1594(f)(3). If a medical improvement has not occurred, then the analysis skips to step five. Id., at § 404.1594(f)(3).

At step four, the Commissioner must determine whether the medical improvements found in step three have any impact on the ability to do work. Id., at § 404.1494(f)(4). The relationship of a medical improvement to the ability to perform work is determined by looking at whether the medical disability has resulted in an increase of the claimant's residual functional capacity ("RFC"). Id., at § 404.1594(b)(3). "If [the] medical improvement is not related to [the] ability to do work," then the analysis proceeds to step five. Id., at § 404.1594(f)(4). If it is related, then the analysis goes to step six. Id.

At step five, the Commissioner determines if one of two sets of exceptions to medical improvements applies. Id., at § 404.1594(f)(5). If an exception does not apply, then the claimant's disability continues. Id. On the other hand, if an exception from the first group is applicable, then the analysis goes to step six. Id. If a second group exception applies, then the claimant's "disability will be found to have ended." Id.

At step six, the Commissioner is required to determine whether the claimant's "impairments in combination are severe." Id., at § 404.1594(f)(6). If all of the claimant's "current impairments in combination do not significantly limit [the claimant's] physical or mental abilities to do basic work activities," then the impairments will be deemed not to be severe, and the disability will be terminated. Id. However, if significant limitation to do basic work is found, then the analysis proceeds to the next step. Id. Basic work is defined as "the abilities and aptitudes necessary to do most jobs," consisting of exertional abilities such as "walking, standing, pushing, pulling, reaching and carrying" and "nonexertional abilities and aptitudes such as seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers." Id., at § 404.1594(b)(4).

7

At step seven, the Commissioner evaluates the claimant's ability to perform past relevant work. Id., at § 404.1594(f)(7). If the claimant can perform past relevant work, then the disability has ended. Id. If he cannot, then the analysis proceeds to the last step, step eight. Id.

At step eight, the Commissioner evaluates the ability of the claimant to perform other work in the national economy. Id., at § 404.1594(f)(8). This analysis takes into account a claimant's RFC, age, education, and past work experience. Id. If the claimant is found to be able to perform other work in light of these factors, then the disability ends. Id. If not, the disability continues. Id.

### C. Standard of Review

This Court is bound by the ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" of evidence and refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). In reviewing the ALJ's decision, where there is conflicting evidence, the ALJ "must adequately explain his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." Hartranft, 181 F.3d at 360. Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

### III.   DISCUSSION

#### A. Summary of the ALJ's Findings

At step one of the analysis, the ALJ found that, through November 1, 2003, the claimant did not engage in substantial gainful activity. (R. 17.) At step two, the ALJ determined that the claimant had medically determinable impairments consisting of asthma, diabetes, elevated bilirubin, and a history of alcohol abuse. (Id.) The ALJ concluded that, as of November 1, 2003, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Id.) At step three, the ALJ found that medical improvement occurred as of November 1, 2003. (Id., at 18.) At step four, the ALJ determined that "the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to perform a wide range of light work." (Id.) At step six, the ALJ found that the claimant's medical improvement was related to his ability to do work since it increased his RFC. (Id.) The ALJ noted that the claimant must avoid "temperature extremes, dust, humidity/wetness, fumes, odors, chemicals and gases." (Id., at 19.) At step seven, the ALJ found that, as of November 1, 2003, the claimant was unable to perform past relevant work. (Id., at 23.) In making this determination, the ALJ considered that the warehouse truck driver position required heavy lifting and that the cook work required kneeling and crouching, in addition to involving environmental factors that were not permitted under the claimant's RFC. (Id.) Finally, at step eight, considering the claimant's age, education, work experience, and RFC, and based on the impairments present as of November 1, 2003, the ALJ determined that the claimant could "perform a significant number of jobs in the national economy." (Id., at 24.)

**B. Analysis**

1. <u>Statutory Interpretation of "Now" and "Current"</u>

Plaintiff argues that, based on <u>Difford v. Secretary of Health and Human Services</u>, 910 F.2d 1316 (6th Cir. 1990), in evaluating the claimant's disability, the term "current" compels that the Commissioner consider the entire period through the time of the ALJ decision when evaluating a claimant's disability. The Commissioner argues that the correct date for evaluation is the date of the cessation determination, November 1, 2003, rather than the date of the ALJ's decision, citing to <u>Johnson v. Apfel</u>, 191 F.3d 775 (7th Cir. 1999). In <u>Johnson</u>, the Seventh Circuit discussed <u>Difford</u> and disagreed with its holding, finding that "it conflicts with the agency's well-grounded conclusion" that the date of the cessation determination is the appropriate point of reference. <u>Id.</u>, at 775-76.

The Third Circuit has not addressed this particular issue. Therefore, this Court applies the <u>Chevron</u> two-step analysis. Since Congress has not expressly decided the meaning of "now" and "current," the Commissioner is entitled to apply her own interpretation of the terms so long as the interpretation is not "arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron, U.S.A. v. Nat'l Res. Def. Council</u>, 467 U.S. 837, 844 (1984). The Commissioner argues that the terms "now" and "current" should be interpreted in a way that distinguishes between the time when original determination was made and the time at which the Commissioner determined that disability ceased. (Def.'s Am. Br., at 13 [hereinafter "Def.'s Br."].) The Commissioner further contends that the ALJ necessarily must "confine[] review of [the] evidence to the time period preceding the initial cessation determination for purposes of administrative finality," arguing that "[o]therwise, there would be no meaningful way under 42 U.S.C. 423(f) for an ALJ to review the

correctness of the determination to terminate benefits." (Id.)  The Court agrees with the Commissioner and the Johnson court that this interpretation is a reasonable one and is not contrary to the statute.  Therefore, the Court finds that the Commissioner's interpretation of these terms is a permissible interpretation of the statute.

        2.        The ALJ's Compliance with the Eight Step Evaluation

Plaintiff asserts that the ALJ did not adequately follow the eight step evaluation for cessation cases.  Plaintiff alleges that the ALJ erred at step three in the evaluation, arguing that the the ALJ should have found that there was no medical improvement.  Plaintiff cites to the medical evidence of his treating physicians, Dr. Garg and Dr. Suranna, in 2006.  Both doctors reported that his asthma was not well controlled, that he could not stand/walk six to eight hours a day, that he had frequent exacerbations, that he suffered shortness of breath on exertion, and that he "was so encumbered since 2001." (Pl.'s Am. Br., at 8 [hereinafter "Pl.'s Br."].)  It is well established that an ALJ cannot reject a treating physician's opinion without pointing to other competent evidence on the record.  Additionally, a treating physician's opinion is entitled to greater weight than the opinion of a non-examining physician.  See Dorf v. Bowen, 794 F.2d 896, 901-02 (3d Cir. 1986).

The Commissioner argues that the ALJ properly concluded that Plaintiff's asthma was fairly well controlled with medication.  The ALJ supported her conclusion by referencing the opinion of Dr. Fechner.  Dr. Fechner referred to a pulmonary function test performed on October 2, 2006, which showed minimal obstructive lung defect, as well as to the fact that Plaintiff had been sober since 1998, making alcohol abuse a non-factor. (Id.)  Dr. Fechner also took into account Plaintiff's diabetes, that there was no resultant end organ damage, and that there was no

record of medication for diabetes or blood sugar readings. (Id.) The Commissioner notes that, in his analysis, Dr. Fechner also considered a physical examination conducted in September of 2003, which was normal and noted that most of Plaintiff's liver function tests were normal. (Id.)

In her decision, the ALJ considered all of the medical evidence and found that there was no evidence that would substantiate Plaintiff's assertion that he used his nebulizer two to three times a day, reasoning that, if this assertion was true, there would be records, readily obtainable from the pharmacy, of prescriptions for the medication that goes into the nebulizer. (R. 23.) Plaintiff submitted no evidence of such prescriptions. (Id.) Plaintiff also did not submit a note from his treating physician indicating that he prescribed the medication for the Plaintiff's nebulizer once per month. (Id.) The medical evidence also shows that Plaintiff had no emergency room visits or hospitalizations and is not on steroids for asthma. (Id., at 355.) Additionally, despite a liver function test on March 27, 2002, during acute hospitalization, all of Plaintiff's liver function tests were normal. (Id.)

In her decision, the ALJ recognized that a treating physician's opinion is given controlling weight. However, this is so only when it is well supported and consistent with other competent evidence in the record. (Id., at 23.) The ALJ considered all of the medical evidence and concluded that the treating physicians' opinions were not supported by or consistent with the other medical evidence. For example, as discussed above, Plaintiff's history of medication refills indicates infrequent use of a nebulizer. (Id., at 320.) Also, a state agency physician in November 2003 determined that Plaintiff suffered no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (Id., at 254-59.) He determined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently.

(Id., at 255.)  Based on all of the evidence, the ALJ determined that the treating physicians' opinions were not "wholly supported by objective clinical findings."  (Id.)  This Court finds that this conclusion was adequately supported by the evidence; the ALJ's determination that there was a decrease in the medical severity of Plaintiff's impairment is supported by substantial evidence on the record.

Plaintiff also argues that the ALJ erred at step four.  At the time Plaintiff's disability was terminated, he was 53 years old.  Plaintiff argues that, regardless of the finding at step three, the ALJ's conclusion at step four with respect to how his new medically improved RFC relates to his ability to do work is overshadowed by the fact that his improved RFC still would entitle him to a disability finding upon his 55th birthday, on November 10, 2004.  But, this argument is moot in light of this Court's holding that the terms "now" and "current" mean at the time of the cessation determination and not the date of the ALJ's decision.  Thus, the proper date of reference for the ALJ's evaluation was November 1, 2003.

       3.       <u>The ALJ's Failure to Use a Vocational Expert Testimony</u>

Plaintiff asserts that his toleration for environmental irritants is less than what the ALJ determined it to be and that the ALJ erred at step eight by not using vocational expert testimony to assess the impact of his environmental restrictions.  First, as discussed above, the ALJ found that Plaintiff's asthma severity had decreased and was being controlled by medication.  In reaching this conclusion, the ALJ noted that Plaintiff had no recent hospitalizations and did not regularly use the nebulizer.

Next, Plaintiff argues that the ALJ erred at step eight by relying on vocational profile Social Security Ruling ("SSR") 85-15 in lieu of vocational expert testimony in determining that there were a significant number of jobs in the national economy that Plaintiff could perform. At step eight, the burden shifts to the Commissioner to demonstrate that a claimant can perform other substantial gainful work. See Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984). On the other hand, the Commissioner argues that the ALJ may rely on a SSR as a replacement for vocational expert testimony so long as the SSR addresses the specific manner in which the claimant's non-exertional limitations affect his ability to do work. Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005).

The Commissioner argues, and this Court agrees, that SSR 85-15 specifically addresses the environmental restrictions relevant to Plaintiff. SSR 85-15 states that a medical restriction to avoid excessive amounts of dust, noise, etc., is minimal in a broad range of work given that most occupations do not involve exposure to such levels. Additionally, the ALJ recognized that, under SSR 85-15, these environmental restrictions are "insignificant at all exertional levels." (R. 24.)

But, Plaintiff also argues that vocational expert testimony was necessary under Agency Acquiescence Ruling ("AR") 01-1(3), which states that the ALJ cannot exclusively rely on the Grids for non-exertional limitations. Before denying disability to a claimant with non-exertional limitations, AR 01-1(3) requires that the ALJ "(1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice . . . [of the intention] to take . . . administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the

14

claimant the opportunity to respond before we deny the claim." AR 01-1(3). However, this ruling is not applicable to cases in which the relevant SSR "includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base." Id. In such a decision, the specific SSR must be cited. Id.

Contrary to this ruling, Plaintiff argues that the Third Circuit in Allen held that it is "always appropriate" to notify a plaintiff in advance of the Ruling to be applied. 417 F.3d at 407. The Court disagrees and finds that, under Allen, advanced notice is not unequivocally required in every circumstance. But, under the Allen's holding, when advanced warning is not given, the ALJ's reliance on the Ruling is subject to "close scrutiny." 417 F.3d at 408. In this case, the ALJ stated "[i]f the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking." (R. 24 (citing SSR 85-15).) She also noted that "based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.10." (Id.) In her opinion, the ALJ expressly refers to the findings of Dr. Fechner that Plaintiff was limited by "dust . . . fumes, odors, chemicals and gases" and then related these findings to the environmental restrictions provisions in SSR 85-15. (Id., at 22, 24.) This Court finds that the ALJ complied with Allen as well as the AR 01-1(3) by referring to SSR 85-15, which specifically addressed the effects of environmental restrictions on Plaintiff's occupational base, and explaining how the SSR related to the record evidence.

    4.  <u>Constructive Application for Re-Authorization of Benefits</u>

  Lastly, Plaintiff asserts that the Commissioner or the claims representative should be required to notify a claimant that is contesting cessation of the need to file a new application to continue benefits in addition to contesting cessation. Plaintiff asserts that there is no logic in having to file a new application, since a claimant contesting cessation would necessarily maintain that he is still disabled, and not that he only was disabled at the time of cessation. Thus, Plaintiff argues that his appeal of the cessation finding was the equivalent of filing a new application for benefits because it put the agency on "constructive notice" of his intention to challenge the termination of benefits, his wish to continue to receive those benefits, and his position that he continues to be disabled. (<u>See</u> Pl.'s Br., at 4.)

  As previously held by this Court, the Commissioner's permissible interpretation of the words "current" and "now" makes it plausible for a claimant to contest that, at the time of the cessation, he was still disabled, even if he is not presently disabled. Thus, the Commissioner's policy that a new application must be filed following a cessation of disability is not in conflict with the relevant statute and flows logically from it when "current" and "now" are given the definition as discussed above. As noted by the Commissioner, a period of disability refers to a continuous time period when a claimant is under a disability, and a period of disability only begins when an "individual files an application for a disability determination with respect to such period." 42 U.S.C. §§ 416(i)(2)(A), (B). This Court finds that, because the Commissioner had determined that the continuous time period of disability had ended, in order to start a second period of disability, Plaintiff needed to file a new application.

## IV. CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision was supported by substantial evidence; the decision is affirmed. An appropriate Order accompanies this Opinion.

DATED: July 19, 2010					/s/ Jose L. Linares
							JOSE L. LINARES
							UNITED STATES DISTRICT JUDGE